MARY A. TOLAND *vs.* PAINE FURNITURE COMPANY.
JOHN TOLAND *vs.* SAME.

Suffolk.   March 13, 14, 1901. — September 6, 1901.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Negligence,* In a building.  *Evidence,* Remoteness, Experts.  *Interrogatories.*

In an action for personal injuries, there was evidence, that the plaintiff had come
to the defendant's shop to purchase furniture and had followed a salesman and
a friend through a doorway hung with portières into a room where the light
was dim and less than in the room she had left, when her foot caught and she
fell down a flight of stairs leading to the basement and was injured, that a rub-
ber mat over which she passed was curled up at the edge, was of cheap material
and much worn and had been in the same condition for two or three months
previously, also that at the time of the accident the head of the staircase was
unguarded although a desk was usually kept there.  The plaintiff contended
that her fall was due to the bad condition of the mat and the unguarded con-
dition of the staircase.  *Held,* that there was evidence for the jury of the de-
fendant's negligence.

In an action to recover for injuries caused by the plaintiff, who had gone into
the defendant's shop to purchase furniture, catching her foot in the curled up
edge of a worn rubber mat of poor quality, evidence of the condition of the mat
four hours after the accident, there being no evidence of any change in the
meantime, is admissible to show its condition at the time of the accident.

In an action to recover for injuries occasioned by the plaintiff, who had gone into
the defendant's shop to purchase furniture, catching her foot in the curled up
edge of a worn rubber mat of poor quality, a salesman for fifteen years of the
rubber company which supplied the matting in question, who had seen rubber
mattings in various stages of wear and part of whose work had been to replace
rubber matting that was worn out and who to a certain extent was familiar with
the effect of various degrees of wear on rubber mattings, was allowed against
objection to testify as to the effect of wear upon such rubber matting as that in
which the plaintiff caught her foot under the conditions assumed to exist in the
case.  *Held,* that whether a witness called as an expert has the requisite quali-
fications and knowledge is largely a matter for the trial judge and his finding
thereon will not be interfered with unless it clearly appears to be erroneous, and
that under this rule the court could not say that allowing the witness to testify
as an expert was erroneous, or that what he testified to was matter of common
knowledge.

Under Pub. Sts. c. 167, § 53, providing that by interrogatories, if the party to the
suit is a corporation, the opposite party may examine the president, treasurer,

clerk, or any director or other officer thereof, in the same manner as if he were a party to the suit, a president so interrogated may be compelled not only to answer as to matters within his personal knowledge but also to inquire of his officers, servants and agents, and to state the information received from them.

TWO ACTIONS OF TORT, one by a wife for injuries and the other by her husband for loss of her companionship and services, by reason of the plaintiff in the first case catching her foot in a rubber mat curled up in the middle by wear and fastened down at both ends, as she turned after passing through a door with portières, and falling down a flight of stairs. Writs dated respectively September 22, 1897, and March 24, 1899.

The first case was before the court on exceptions taken at a former trial, which were sustained by this court in a decision reported in 175 Mass. 476. Later the two cases were tried before *Aiken,* J., who refused to order verdicts for the defendant, and the jury returned verdicts for the plaintiff in the first case for $5,500 and in the second case for $750.

The judge reported the cases for the determination of the questions of law by this court. If verdicts for the defendant should have been ordered on the evidence as it stood, or if verdicts for the defendant should have been ordered on the evidence after striking out what should have been excluded, judgments were to be entered for the defendant. If there was error in any other rulings of the judge, new trials were to be ordered. If there was no error in the rulings then judgments were to be entered on the verdicts.

There was also a bill of exceptions allowed by *Fessenden,* J., to an order of the Superior Court to the president of the defendant to answer certain interrogatories. The questions raised by the report and that raised by the bill of exceptions are stated in the opinion of the court.

*J. Lowell & S. H. Smith,* for the defendant.

*C. F. Choate, Jr.,* for the plaintiffs.

LATHROP, J. These are two actions of tort brought against a corporation dealing in furniture, in whose shop the plaintiff in the first case, while there on business, fell down a flight of stairs, and was injured through the alleged negligence of the defendant. The second action is brought by the husband of the plaintiff in the first case, to recover for expenses incurred by him for

medical attendance, etc., and for loss of the comfort, services, society and companionship of his wife. After verdicts for the plaintiffs, the cases were reported for our determination, by the judge who tried them in the Superior Court, and upon a bill of exceptions to the order of the judge ordering the president of the defendant company to answer certain interrogatories.

When the first case was last before us, 175 Mass. 476, the defendant's exceptions were sustained on the ground that, if there was a defect, the evidence did not show that it had been there so long that the defendant knew or ought to have known of it. It was also remarked in the opinion : " It is not contended, and it could not be, that the maintenance of the stairway close by the door through which the plaintiff passed, and the neglect of the defendant to warn the plaintiff of it constituted negligence on its part. *Hunnewell* v. *Haskell*, 174 Mass. 557." In reference to the last remark, it may be stated that an examination of the bill of exceptions, when the case was formerly before the court, shows that it contained this sentence : " It was understood at the trial that the plaintiff made no contention as to there being any lack of light." In the present case there is such a contention. So, too, the evidence now before us differs essentially from that at the former trial, and the opinion already given affords us no assistance.

The first question in this case is whether the judge at the close of the evidence should have instructed the jury to return verdicts for the defendant. Of course the second case depends upon the first, and the questions are whether there was sufficient evidence that the plaintiff in the first case was in the exercise of due care, and whether the defendant was guilty of negligence. The evidence for the plaintiff tended to show the following facts.

The accident happened about noon on Saturday, April 3, 1897, a bright, clear day. The plaintiff went into the shop to purchase furniture. On entering, a salesman was assigned to her, and he conducted her, and a friend who was with her, across the shop and through a doorway where portières were hanging. The salesman and the plaintiff's friend passed through first. The portières swung back, and were pushed aside by the plaintiff. She passed through, took a few steps, her foot caught, and she

fell down a narrow flight of steps leading into the basement. The light in the room where the plaintiff fell was dim, not so light as the room from which she had come. There was a long rubber mat extending across the room, and between that and the head of the stairs was a small rubber mat, with a space of an inch and a half between them, caused by the edge of the smaller mat curling up. This mat was originally tacked down, but some of the tacks had come out of their holes in the floor and were curled under the mat, flattened over one side, and rusty, and the holes in the floor were filled with dust.`

There was evidence to show that the mats were made of cheap material, and were found to be much worn soon after the time of the accident. The contention of the plaintiff was that the plaintiff's fall was due to the bad condition of the mats, and the unguarded condition of the staircase, and there was evidence on both of these points. There was also evidence that the mats had been in the same condition in which they were at the time of the accident for two or three months prior thereto, although there was contradictory evidence as to what this condition was. As to the unguarded stairs, there was evidence that a desk was usually kept at the head of the stairs, so that a person could not fall down there, though there was evidence that it was put there to hide an ugly post. Whether it was there on the day of the accident was in dispute.

It was not contended that the plaintiff was not in the exercise of due care, and the whole of the defendant's case rests on the assumption that leaving out the testimony of some of the witnesses on behalf of the plaintiff, whose evidence was objected to, it did not appear that the defendant was guilty of negligence. This may be granted, and we have hitherto treated the case as if the evidence was admissible. So treated there was enough evidence for the jury of the defendant's negligence.

We proceed to consider the evidence objected to.

One McKenzie testified as to the condition of the stairs, and the mats, on Saturday the day of the accident at four o'clock and on the Monday morning following. He testified that the condition was the same on Monday as on Saturday. The question then is whether a defective condition of things found four hours after an accident, there being no evidence of any change in the

meantime, is admissible to show the condition at the time of the accident. We have no doubt that the evidence was admissible. *Daniels* v. *Lowell*, 139 Mass. 56. *Cutter* v. *Hamlen*, 147 Mass. 471, 476. *Neal* v. *Boston*, 160 Mass. 518. *Shepard* v. *Creamer*, 160 Mass. 496. This disposes also of the exception to the admission of the testimony of one McClellan, who visited the shop with McKenzie on Monday morning.

One Muldoon, a salesman for fifteen years of the Boston Belting Company, which manufactured rubber goods, testified that his company supplied the rubber matting in question, and that he supplied matting for railroads, and had seen rubber mattings in various stages of wear; that at times, with customers of his who had dealt with him before, it had been part of his work to attend to replacing rubber matting which was worn out; and that to a certain extent he was familiar with the effect of various degrees of wear upon rubber matting. He was then allowed to testify, subject to the exception of the defendant, as to the effect of wear upon such rubber matting, under the conditions assumed to exist in the case. The only objections urged are that he was not qualified as an expert, and that what he testified to was a matter of common knowledge. Whether a witness who is called as an expert has the requisite qualifications and knowledge to enable him to testify is largely a matter for the trial court; and the finding of the presiding judge upon this point will not be interfered with unless it clearly appears to be erroneous. *Perkins* v. *Stickney*, 132 Mass. 217. *Hardiman* v. *Brown*, 162 Mass. 585. We cannot say in this case that the allowing of Muldoon to testify as an expert was erroneous. Nor can we say that what he testified to was a matter of common knowledge.

The remaining question relates to the order of the court that the president of the defendant company answer certain interrogatories filed under the Pub. Sts. c. 167, §§ 49 *et seq.* At the argument it was contended that there was error only in requiring the president to answer interrogatories 7, 10 and 11. These required the president, if he did not know certain facts inquired about of his own knowledge, to inquire of his officers, servants and agents, and to state the information received from them.

The question sought to be raised was so recently before the court in *Gunn* v. *New York, New Haven, & Hartford Railroad*,

171 Mass. 417, that no discussion of it is necessary. The case at bar is clearly within the rule there laid down.

The result is that the order must be

> *Exceptions overruled; judgment for the plaintiffs on the verdicts.*