BESSIE BOUTLIER, administratrix, *vs.* CITY OF MALDEN.

SAME *vs.* MALDEN ELECTRIC COMPANY.

SAME *vs.* SUBURBAN GAS AND ELECTRIC COMPANY.

Middlesex.    December 4, 1916. — May 21, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Causing death, In maintaining electric wires, Invited person.  *Adoption.  Electricity.  Wires.  Evidence,* Opinion: experts.  *Practice, Civil,* Exceptions.  *Words,* "Succession to property."

If a boy seventeen years of age, who has been adopted by a man and wife, is killed by the negligence of the servants or agents of a corporation, in an action by the administrator of his estate under R. L. c. 171, § 2, as amended by St. 1907, c. 375, to recover damages for his death, his adopting parents under R. L. c. 154, § 6, have the rights that his natural parents would have in the absence of adoption and as his next of kin are entitled to receive the damages recovered.

In the provisions of R. L. c. 154, § 6, which state the effect of an adoption, the words "succession to property" refer only to succession under the laws relating to the descent and distribution of intestate property and do not relate to the right of adopting parents as the next of kin of their son by adoption to receive the damages recovered by the administrator of his estate under St. 1907, c. 375, for negligently causing his death.

In an action by an administrator under St. 1907, c. 375, for causing the death of the plaintiff's intestate, a boy seventeen years of age, by negligently permitting a loose wire charged with electricity to hang upon or near a travelled highway, where the injury resulting in the death occurred before the passage of St. 1914, c. 553, if it appears that the intestate on a dark and stormy evening failed to see the wire lying in the grass near the sidewalk on which he had been walking and, thinking that the sparks emitted by it were fire-flies, stooped to catch some of the fire-flies and took hold of the live wire that caused his death, there is evidence for the jury that the intestate was in the active exercise of the care reasonably to be expected of a boy seventeen years old.

Together with the case described above was tried an action against the city in which the highway lay, for causing the intestate's death by a defect in the highway consisting of a loose wire charged with electricity, and there was conflicting evidence as to whether the accident occurred within the limits of the highway. A witness testified that he and the intestate were walking in the middle of the sidewalk, that the intestate stepped about two steps and stooped down and that he was about a foot in on the grass.  There also was testimony that the street line at the place of the accident was about a foot from the edge of the grass on the inside of the sidewalk, which was about eight feet wide.  *Held,* that, whether the accident occurred within the limits of the highway, was a question for the jury.

In the same case, there was nothing to show when the wire was broken or how long it had been hanging in the street, nor was there any evidence that the city knew or by the exercise of proper care and diligence might have known of the existence of the loose wire, and it was *held,* that in the action against the city a verdict rightly was ordered for the defendant.

The other actions tried at the same time were severally against the M electric company and the S electric company. There was evidence that the wire that broke and fell to the ground belonged to neither of these companies but formerly had been a part of a police telephone system belonging to a town in which one of the poles supporting it was situated, that the poles on which this wire had been supported belonged to the M electric company and that the same poles supported wires of that company and also supported wires of the S electric company carrying a high voltage of electricity, that the wire that broke had fallen into disuse and was corroded and eaten by rust, that the broken wire came in contact with one of the high tension wires of the S electric company, that this high tension wire was old and weather beaten, that the insulation had worn off in places and that when wet it could not insulate properly the current of electricity that passed through it, and that a proper inspection of the wire that broke and fell and of the wire with which it came in contact would have disclosed the fact that they were dangerous to persons travelling on the highway below, that one of the poles supporting these wires was at the place of the accident was in a town and the other pole in an adjoining city and that both of the electric companies had violated ordinances of the city and by-laws of the town by allowing the wires to be attached to the poles without permission of the municipal authorities. It was *held* that there was evidence of negligence on the part of each of the electric companies for submission to the jury.

In an action by an administrator for causing the conscious suffering and death of the plaintiff's intestate by negligently permitting an old wire which had become charged with a high power of electricity to break and fall to the ground near a travelled highway, if there is evidence that the intestate came in contact with the wire and received the shock, that he exclaimed "Oh!", "that the yell was a very loud one, that the boy fell backward and lay about a foot over the gravel on the grass" and that afterwards he rolled upon the ground and exclaimed "O dear!", there is evidence warranting a finding that the death of the intestate was preceded by conscious suffering.

In the action above described it appeared that adjoining the public sidewalk on which the intestate was walking just before the accident was an open space, and the defendant electric companies contended that, if the intestate was upon the open space when he came in contact with the live wire, he was a trespasser there and so was not entitled to recover, but it was *held* that, if, as the plaintiff offered to prove, it was shown that the open space had been used by the public as a playground and had been used as a common passageway by persons travelling between the streets on either side of it, and that such uses had been made of the open space with the knowledge and consent of the owner, it could have been found that there was an implied invitation to the public, including the intestate, to travel over it, and that, if it was shown that the open space had been used in this manner as a playground and for travel for thirty years, the defendant companies could have been found to have had knowledge of such uses and would be charged with notice that persons might be at any time on the land with the permission of the owner.

It also was *held* that, if the defendants maintained or used poles upon the highway and near the line of the open space to which were attached wires carrying a high voltage of electricity, they were bound to exercise reasonable care so to maintain their wires that persons rightfully upon the land would not be injured.

It also was *held* that, if the evidence offered by the plaintiff had been admitted and if upon that evidence it had been found that the intestate was upon the land by the implied invitation of the owner, he was there in the owner's right and would have the same rights against the defendant companies that the owner would have.

In the cases above described it did not appear that the defendant companies had any right to use the open space for the erection of poles and the maintenance of wires, but it was *said* that, if it were assumed that the defendant companies were licensees in placing their wires over the land, the question then presented would be what duty they owed to persons rightfully upon the land in the owner's right, of whose presence there they were charged with notice.

It further was *said* that, whether or not the defendant companies were rightfully upon the land, they owed to one there in the owner's right the duty to use due diligence so to maintain and manage their electric wires that he should not be injured.

An exception to the ruling of a presiding judge excluding expert testimony cannot be sustained where the ground of the exclusion does not appear and where the testimony offered may have been excluded on the ground that the judge was not satisfied with the qualification of the witness as an expert.

THREE ACTIONS OF TORT, each of them brought by the administratrix of the estate of Ralph Howard Boutlier, late of Malden, the first against the city of Malden under R. L. c. 51, §§ 17, 18, for the loss of life and bodily injury of the plaintiff's intestate alleged to have been caused on October 20, 1913, by a defect in Lynn Street, a highway of the defendant, consisting of a loose wire dangerously charged with electricity and negligently permitted to hang down upon such highway, and the second and third actions, respectively against the Malden Electric Company and the Suburban Gas and Electric Company, for causing the conscious suffering and death of the plaintiff's intestate by the negligence of their servants and agents. Writs dated January 20, 1914.

In the Superior Court the cases were tried together before *Brown,* J., who ordered a verdict for each of the defendants and reported the cases for determination by this court. If, on all the evidence presented and on all the evidence offered by the plaintiff and excluded improperly by the judge, the plaintiff was entitled to go to the jury in any or all of the three cases, such case was or such cases were to stand for trial. A copy of a plan referred to in the opinion, which shows the position of the poles supporting wires, is printed on page 482.

*R. E. Tibbetts, (C. M. Gordon* with him,) for the plaintiff.

*H. L. Boutwell,* for the city of Malden.

*W. I. Badger, (W. I. Badger, Jr.,* with him,) for the electric companies.

CROSBY, J.　These are three actions to recover for the conscious suffering and death of the plaintiff's intestate who was killed on the evening of October 20, 1913, by reason of coming in contact with a wire charged with electricity.　He hereafter will be referred to as the intestate.　At the time of the intestate's injury and death he was seventeen years of age.　Several years previously he had been legally adopted by the administratrix and her

husband and lived with her at the time of the accident.　At the conclusion of the evidence the presiding judge ordered a verdict for the defendant in each case and reported the cases to this court.

The accident which resulted in the intestate's death occurred in the city of Malden, but whether at that time he was within the limits of a highway known as Lynn Street or was outside the limits of the street, was in controversy between the parties.　One Repetto, who was with the intestate at the time of the accident, testified "that they were walking in the centre of the sidewalk; that it was a very dark night; that as they walked Ralph Boutlier said suddenly, 'Oh, look at the fire-flies.　Let's get some;' that he gave about two steps, two short steps from where we were walking, then stooped down,— I should say about a foot in on the grass, two

short steps from where we were walking." This witness also testified that after the accident he saw a wire "that hung down on the near side of the third tree from the Moore house, the wire going across the sidewalk and the wind blowing it back and forth up against the tree," and that the wire struck him (the witness) on the overcoat after Boutlier fell and he got hold of it. It burned his hand, "tossed him right out in the middle of the street."

The evidence showed that there was a line of poles with cross-arms and wires of various kinds thereon near the place of the accident; that the poles were owned by the Malden Electric Company, one of the defendants; that one of these poles, referred to as B, was located in the town of Revere, a short distance from the line between Revere and Malden; that the pole referred to as C, was located in Malden; that the wire with which the boy came in contact had been attached to poles B and C and broke and fell to the ground some time before the accident, — just when does not appear. This wire formerly had been a part of a police telephone system belonging to the town of Revere. The top cross arms on the poles to which the wire had been attached were owned by the town of Revere which had other wires upon these cross arms; the wire that broke was a bare wire; there was evidence to show that it was corroded and eaten by rust and had fallen into disuse. On these two poles on cross arms below the top cross arms were strung wires of the Malden Electric Company, and also high tension wires of the Suburban Gas and Electric Company carrying a high voltage of electricity. There was testimony that the wires between these poles were in part suspended directly over the sidewalk and over an unfenced space which for many years had been open to public travel. The police telephone wire with which the intestate came in contact had broken between poles B and C and had crossed one of the high tension wires of the Suburban Gas and Electric Company. The evidence showed that the latter wire was not properly insulated; that it was old and weather beaten, the insulation worn off in places, and when wet could not properly insulate the current of electricity which passed through it. There was testimony that the town of Revere and the Suburban Gas and Electric Company had not received any legal permission to attach wires to poles at this point in Malden, and that the Malden Electric Company had

not been lawfully authorized to erect its poles at this place in the town of Revere. In other words, there was evidence that there had been a violation by these companies of the ordinances of the city of Malden and of the town of Revere in the respects above recited. There was testimony tending to show that a proper inspection of the wire which broke and fell and of the wire with which it came in contact, would have disclosed the fact that they were dangerous to persons travelling upon Lynn Street or upon the open space.

1. An important question to be determined at the outset is whether the adopting mother of the plaintiff stands in the relation of his next of kin for whose benefit an action will lie by the administratrix for his death under R. L. c. 171, § 2, as amended by St. 1907, c. 375, and under R. L. c. 51, § 17, and acts in amendment thereof. The intestate, who was seventeen years old at the time of his decease, was legally adopted by the administratrix and her husband by decree of the Probate Court in the year 1900, and lived with her until his death.

The R. L. c. 154, § 6, upon proper proceedings, authorizes the Probate Court to make decrees for adoption by which "except as regards succession to property, all rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between the child and the petitioner and his kindred, and shall, except as regards marriage, incest or cohabitation, terminate between the child so adopted and his natural parents and kindred or any previous adopting parent;" the exception "as regards succession to property" is dealt with in the following section (§ 7). Manifestly the statutory right of an administrator to recover damages for the death of a person to the use of his surviving next of kin is not a right of succession to property. We are of opinion that under R. L. c. 154, § 6, the right of the adopting parent to recover for death under the statutes before referred to is the same as that of a natural parent in the absence of adoption. This court has held that the intent of these sections of the statute (§§ 6 and 7) was to put an adopted child for all legal purposes, with certain exceptions, in the place of a natural child. *Washburn* v. *White*, 140 Mass. 568. *Delano* v. *Bruerton*, 148 Mass. 619. *Buckley* v. *Frasier*, 153 Mass. 525. The effect of adoption is that the child so adopted is to be deemed the

child of the parents by adoption to the full extent as if born to them in natural wedlock, and whatever legal consequences follow, the natural relation of child and parent thereafter exists between the adopted child and the adopting parent with the exceptions referred to in the statute, none of which applies to the case at bar. "Succession to property" means succession under the laws regulating the descent and distribution of intestate property. *Attorney General* v. *Clark*, 222 Mass. 291, 295. *Bolinger* v. *Beacham*, 81 Kans. 746. *Atchison, Topeka & Santa Fe Railway* v. *Ryan*, 62 Kans. 682. In a case recently decided by this court, it was held that under the workmen's compensation act, the adopting parent of a deceased employee stood in the relation of next of kin to such employee. *Cowden's Case*, 225 Mass. 66.

2. There was evidence to show that the intestate had some knowledge of the dangerous qualities of electricity. Still, in view of his age, it could not be ruled that he was not in the exercise of as high a degree of care as naturally would be expected of a boy seventeen years old. We do not think as matter of law that he was negligent because upon this dark and stormy night he failed to see the wire lying in the grass, or because he mistakenly believed that sparks emanating from it were fire-flies. We do not understand the defendants to contend that he took hold of the wire with knowledge of what it was, and that it was charged with electricity. The question whether he failed to exercise due care was a question of fact to be determined by the jury. The burden was upon the plaintiff to show such care affirmatively in order to recover. The presumption created by St. 1914, c. 553, does not apply to this case because the cause of action occurred before the statute went into effect.

3. The evidence was conflicting whether the accident occurred within the limits of the highway or outside thereof. The witness Repetto testified that he and the intestate were walking in the centre of the sidewalk and that the latter stepped about two steps and stooped down; that the intestate was about a foot in on the grass. There was also testimony that the street line at the place of the accident was about a foot from the edge of the grass on the inside of the sidewalk and that the latter was about eight feet in width. We are of opinion that the question whether the accident occurred within the limits of the highway or outside of

it was for the jury. Upon the evidence, the plaintiff could have been found to be a traveller upon the highway.

This brings us to a consideration of the question whether the action against the city of Malden should have been submitted to the jury. The declaration in that case contains four counts; the third and fourth allege that the city owned and negligently maintained certain poles and wires upon the way, but there was no evidence to sustain these allegations. It follows that no recovery could be had on those counts.

The first and second counts allege that the intestate was a traveller upon the highway and was injured by reason of a defect and want of repair in the way. While there was evidence which would have warranted a finding that he was a traveller upon the way, there was nothing to show when the wire was broken or how long it had been hanging in the street; nor was there evidence that the city knew or by the exercise of proper care and diligence might have had reasonable notice of a defect in the way, if such a defect existed. For this reason in the case against the city a verdict was rightly ordered for the defendant. R. L. c. 51, § 18. The case of *Wright* v. *Chelsea,* 207 Mass. 460, is plainly distinguishable from the case at bar. *O'Donnell* v. *North Attleborough,* 212 Mass. 243.

4. There was evidence of negligence of the Malden Electric Company. If the jury found that its poles and wires were maintained without the permission of the town of Revere or of the city of Malden, and that without any permission it authorized the Suburban Gas and Electric Company to place wires upon its poles, such evidence in itself was evidence of negligence of the Malden Electric Company. *Brunelle* v. *Lowell Electric Light Corp.* 194 Mass. 407. *Donovan* v. *Connecticut Valley Street Railway,* 213 Mass. 99.

There was evidence that the Malden Electric Company had permitted the wire with which the intestate came in contact to remain upon its poles in a rusty, corroded and dangerous condition for at least two years before the accident, without taking any steps either to remove it, or to provide by guard wires or otherwise against its coming in contact with the high tension wires below it, which wires also could have been found to have been in an unsafe condition due to defective insulation; and that

the unsafe and dangerous condition of the wire which fell, as well as that of the wire with which it came in contact, could easily have been discovered by reasonable inspection. Although the defendant did not own either of these wires, still it owned the poles on which they were supported, and if the wires were placed there with its knowledge the defendant might be found liable if it failed to adopt such precautions as were reasonably necessary to avoid a danger which might result in the death of or injury to persons lawfully travelling upon the highway. *O'Donnell* v. *Boston Elevated Railway,* 205 Mass. 200. *Mahan* v. *Newton & Boston Street Railway,* 189 Mass. 1. *Lutolf* v. *United Electric Light Co.* 184 Mass. 53. *Leahan* v. *Cochran,* 178 Mass. 566. *Griffin* v. *United Electric Light Co.* 164 Mass. 492. *Newcomb* v. *Boston Protective Department,* 146 Mass. 596. *Milford* v. *Holbrook,* 9 Allen, 17. It could not properly have been ruled that there was no evidence of negligence on the part of this defendant.

5. The question whether the Suburban Gas and Electric Company was negligent was also for the jury. There was testimony that it maintained its wires upon the poles of the Malden Electric Company at the place of the accident without permission and in violation of the ordinances of the city of Malden; that its wire (with which the fallen wire came in contact) carried the current of electricity which resulted in the death of the intestate, and was allowed to become worn; that its insulation was defective and that it was bare in places; that by reason of these defects at the time of the accident, and for a long time previously, it had been in an unsafe and dangerous condition, and that such condition could have been discovered by reasonable inspection, and remedied. Besides, as previously stated, it could have been found that the wire which broke was rusted and corroded and had been in an unsafe condition for a long time before the accident; that its dangerous condition also would have been apparent on proper inspection. It cannot be doubted that this evidence was amply sufficient to justify a finding of negligence. *Romana* v. *Boston Elevated Railway,* 218 Mass. 76. *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495. *Griffin* v. *United Electric Co., ubi supra. Lutolf* v. *United Electric Light Co., ubi supra.*

6. Upon the question of conscious suffering there was evidence that immediately after the intestate came in contact with the

wire and received the shock, he exclaimed "Oh!"; "that the yell was a very loud one; that the boy fell backward and lay about a foot over the gravel on the grass." There was other evidence that afterwards he rolled upon the ground and exclaimed "O dear!" We are of opinion that there was sufficient evidence to warrant a finding that his death was preceded by conscious suffering, and that a contrary ruling could not properly have been made. *Knight* v. *Overman Wheel Co.* 174 Mass. 455, 463.

7. The plaintiff excepted to the exclusion of the following offers of proof: "Referring to the green or open space between the Moore house, so called, and pole B, the plaintiff offers to show that for more than thirty years the said space has been open, unrestricted, unfenced and used for common passage and travel by all persons coming down Lynn Street and desiring to go to Lawrence Street, or *vice versa*, at their will; that there is and has been a travelled path across it, although the deceased was not at or in the path at the time of the accident; that there has never, for thirty years, been any trespass sign; that a United States Post Office box is and for many years has been within the limits of said green so that any one depositing letters in said box must pass within the limits of said property; that children have played there without let or hindrance for more than thirty years and that the memory of any of the inhabitants in the vicinity does not hold any memory of any person whomsoever being warned off the said green or forbidden its use for common and public passage and play." This evidence was offered "against the two defendant electric light companies, to show that the plaintiff's intestate, if as a matter of fact found to have been on private property at the time when the accident happened, which the plaintiff denies, was there rightfully, by license of the owner, and to show that the defendant electric light companies were chargeable with notice that persons might be expected to be where the intestate was (if found to have been on private property) and as affecting, therefore, their negligence in allowing an electric light wire to fall down upon private property (if it shall be found that the wire was on private property when the plaintiff's intestate was injured)." The wire which broke and fell had been attached to poles B and C. Both of these poles were located in the highway near the line which divided the open lot from the highway. The

wire broke and fell to the ground at a point about midway between poles B and C and close to the sidewalk on Lynn Street.

The defendant companies contend that, if the plaintiff's intestate was upon the open space, he was a trespasser thereon, and if that be the fact, as matter of law the plaintiff is not entitled to recover.

If, as the plaintiff offered to prove, it was shown that the open space had been used by the public as a playground and had been used as a common passageway and for travel by persons travelling between Lynn Street and Lawrence Street, and that such uses had been made of the open space with the knowledge and consent of the owner, it could have been found that there was an implied invitation by the owner to the public including the intestate to travel over it. Under such circumstances the latter would not be a trespasser as against the owner but would be rightfully upon the land by his permission.

If the evidence showed that the land was used by the public as a playground and for purposes of travel and had been so used for thirty years, the defendant companies could have been found to have had knowledge of such uses, and would be charged with notice that persons might be at any time upon the land with the permission of the owner.

If the defendants maintained or used poles upon the highway and near the line between the highway and the open space upon which wires were attached carrying a high voltage of electricity, they were bound to exercise reasonable care so to maintain their wires that persons rightfully upon the land would not be injured.

If the evidence offered by the plaintiff had been admitted, it could have been found that the intestate was upon the land by the implied invitation of the owner. If so, he was there in the owner's right and would have the same rights against the defendant companies that the owner would have.

It does not appear that the defendant companies had any right to use the open space for the erection of poles and the maintenance of its wires. If we assume however that they were licensees in placing their wires over the land, the question then presented is: What duty did they owe to persons who were rightfully upon the land in the right of the owner and of whose presence there the defendants were charged with notice?

· While the measure of liability of those maintaining wires carrying a dangerous current of electricity has been determined frequently, we are not aware of any case decided by this court where the facts are entirely analogous to those presented in the case at bar.

We are satisfied that the questions involved may be decided by the application of general principles. As was stated in *Guinn* v. *Delaware & Atlantic Telephone Co.* 43 Vroom, 276, at pages 277, 278: "The test of the defendant's liability to a particular person is whether injury to him ought reasonably to have been anticipated. . . . The general rule is that a person is liable for those results of his negligence which are reasonably to be anticipated; the exemption of the landowner from liability as to trespassers and licensees is necessary to secure him the beneficial use of his land, but no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with."

If we assume that the defendant companies had a right to maintain their wires over the open space, the plaintiff still might be entitled to recover, as her intestate has not been shown to have interfered with the rights of the defendants.

The defendants, whether rightfully upon the land of the owner or otherwise, owed the duty to the intestate, who could have been found upon the evidence excluded to have been there in the owner's right, to use due diligence so to maintain and manage their electric wires that he would not be injured.

If the intestate was rightfully upon the land and the defendants reasonably might have anticipated that he would be there, it could have been found that the defendants were negligent in the care of their wires for the result of which negligence they were answerable to the plaintiff. *Barnett* v. *Atlantic City Electric Co.* 2 Gummere, 29, 32. *Coyne* v. *Pennsylvania Railroad,* 2 Gummere, 257. *Duel* v. *Mansfield Plumbing Co.* 1 Gummere, 582. *Daltry* v. *Media Electric Light, Heat & Power Co.* 208 Penn. St. 403. *Connell* v. *Keokuk Electric Railway & Power Co.* 131 Iowa, 622. *Davoust* v. *Alameda,* 149 Cal. 69. The above cases are readily distinguishable from *Heskell* v. *Auburn Light, Heat & Power Co.* 209 N. Y. 86, *Hickok* v. *Auburn Light, Heat & Power Co.* 200 N. Y. 464, *Braun* v. *Buffalo General Electric Co.* 200 N. Y. 484.

The case of *Hector* v. *Boston Electric Light Co.* 161 Mass. 558,

(*S. C.* 174 Mass. 212,) is distinguishable from the case at bar. In that case the defendant had erected a standard for the support of its electric wires on the roof of a building known as 45 Temple Place in Boston. The plaintiff was a lineman in the employ of a telephone company and the defendant had given the telephone company permission to attach wires to the standard. The plaintiff was directed by his employer to attach a telephone wire to the standard. Instead of going up through the building of 45 Temple Place to reach the standard the plaintiff went upon the roof of No. 29 Temple Place and then proceeded to cross the intervening roofs to the roof of 41 Temple Place, which roof was twenty feet higher than the roof of 45 Temple Place. While upon the roof of No. 41 Temple Place he came in contact with an uninsulated electric wire charged with electricity, owned by the defendant, and was injured. This court held that while the defendant had given to the plaintiff through his employer a license to go upon the roof of No. 45 Temple Place to attach wires to the standard on that roof he was not entitled to go upon other buildings to reach the standard, and therefore that the defendant owed him no duty properly to insulate its wires at a place where it had no reason to expect that he would go in the performance of his duties and where the defendant had neither invited nor licensed him to go, and that as he was not acting within the scope of his license when injured he was not entitled to recover.

The exception to the exclusion of the expert testimony offered to show that the plaintiff was not killed instantly but consciously suffered cannot be sustained. It does not appear on what ground the evidence was excluded. The judge may not have been satisfied that the witness was qualified so to testify. His decision upon that question could not be reversed unless clearly erroneous. *White* v. *McPherson,* 183 Mass. 533. *Toland* v. *Paine Furniture Co.* 179 Mass. 501.

It follows from what has been said that in the case against the city of Malden judgment is to be entered for the defendant, and that the cases against the Malden Electric Company and the Suburban Gas and Electric Company are to stand for trial.

*So ordered.*