## NELLIE F. O'NEIL vs. NATIONAL OIL COMPANY.

Suffolk. March 25, 1918. — July 16, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Unguarded hole near private way. *Nuisance. Agency,* Ratification. *Practice, Civil,* Exceptions. *Joint Tortfeasors. Damages,* Mitigation, Part satisfaction by co-tortfeasor. *Release. Covenant,* Not to sue.

In an action against an oil company by a housemaid for personal injuries sustained on a foggy evening by falling into an excavation from which a gasoline tank had been removed by the defendant for repairs at the request of the owner of the land, who was the plaintiff's employer, when the plaintiff with two other housemaids was "getting an airing" by walking in the private driveway of their employer, there was evidence that, although the tank when in place was from six inches to a foot from the driveway, yet the excavation made to remove it was four or five feet deep and four or five feet in diameter, and there was some evidence that the unguarded hole extended into the driveway and that the plaintiff was walking on the driveway when injured. *Held,* that it was the duty of the defendant, if shown to have made the excavation, to use reasonable care to guard the work and in a proper way to protect the employees of the landowner lawfully using the driveway from the danger of falling into the hole.

In the same case there also was evidence that the plaintiff when she fell into the hole was walking across the lawn for the purpose of picking a pear. There was evidence that the plaintiff and other maids employed in the household of the landowner picked fruit in the daytime and that no objections had been made, and it was *said* that, even if the plaintiff at the time of her injury was on the lawn and not on the driveway and was looking for a pear, the jury could find that the plaintiff in passing over the lawn, although not invited, was there lawfully so far as the defendant was concerned and could recover for the consequences of its negligence.

In the same case it appeared that the defendant delivered gasoline to the landowner from a truck. The driver of the truck, whose duty it was to sell for the defendant gasoline, oil and tanks, testified that he informed the defendant's president that he was going to "take up and, if possible, repair" the landowner's tank and that the president told him to "go ahead," that the driver paid for the excavating and reported to the defendant's president that the landowner was satisfied with the tank, that a bill for the amount thus paid by the driver was sent by the defendant's president to the landowner and paid by him to the defendant. The defendant asked the judge to instruct the jury that there was no evidence that the act of the driver in digging up the tank was within the scope of his employment. The judge refused to give this instruction. *Held,* that the instruction was refused rightly, as there was evidence of the driver's authority to do the work and that, even if he originally had lacked such authority, his acts were ratified by the president's order to go on with the work and by the defendant's acceptance of payment for it from the landowner.

In the same case the defendant contended that the judge had given an instruction which authorized the jury to find that the driver was acting within the scope of his employment without considering the effect of ratification and express approval, but it appeared that the defendant did not call the attention of the judge to this objection to the instruction given by him and took no specific exception to any part of the judge's charge. *Held,* that the contention, whether warranted by anything in the charge or not, was not open to the defendant.

In the case above described it appeared that before the action was brought the plaintiff had brought an action for her injuries against the landowner, which she discontinued under an agreement by which she covenanted with the landowner not to sue him and received from him the sum of $1,500, but the instrument containing the covenant not to sue recited that it did not release the plaintiff's cause of action against any one other than the landowner, and it was *pointed out* that the defendant, not being a party to the instrument, could introduce oral evidence to show that the plaintiff accepted the money in release of all claims against her employer, but, although there was evidence which would have warranted such a finding, it also was *pointed out* that this was a question of fact for the jury and that they had a right to find that the money was not accepted for this purpose.

In the same case the defendant asked the judge to instruct the jury that, if they found any liability on the part of the defendant, they must consider the payment of $1,500 by the landowner in mitigation of damages. The judge refused to give this instruction and the jury returned a verdict for the plaintiff in the sum of $5,000. *Held,* that, while the jury must have found that the $1,500 was not received from the landowner to release or discharge him from liability but was received from him in consideration of the plaintiff's covenant not to sue him for the personal injury she had received, the $1,500 should be applied in reduction of her damages, as she was entitled to but one satisfaction of her claim from all the tortfeasors who caused her injuries, and it was *ordered* that the defendant's exception should be sustained unless the plaintiff within a time named should remit the amount of the verdict in excess of $3,500.

TORT for personal injuries sustained on August 2, 1915, from falling into a hole on or near the driveway on the estate of the plaintiff's employer at Westwood, which was alleged to have been dug by the servants or agents of the defendant acting within the scope of their employment. Writ dated November 19, 1915.

The defendant's answer, in addition to a general denial, alleged the acceptance by the plaintiff from Frederick S. Converse of the sum of $1,500 in satisfaction of all the damages alleged in the plaintiff's declaration, whereby the "plaintiff's cause of action was wholly settled and discharged."

In the Superior Court the case was tried before *Sisk,* J. The evidence is described in the opinion. The agreement under seal containing the plaintiff's covenant not to sue Frederick S. Converse, referred to in the opinion, was as follows:

"Know all men by these presents that I, Nellie F. O'Neil of Boston, in the County of Suffolk and Commonwealth of Massachusetts, in the Consideration of Fifteen Hundred ($1500) Dollars to me in hand paid by Frederick S. Converse of said Boston, the receipt whereof is hereby acknowledged, do hereby covenant and agree to and with Frederick S. Converse, his heirs and assigns as follows:

"(1) That I will forbear to sue or maintain any action, suit or other proceeding, or to make any claim of any nature whatsoever, against the said Frederick S. Converse, for or on account of an accident to me on or about the second day of August, 1915, while in the employ of the said Frederick S. Converse.

"(2) That I will, and my heirs and executors, shall indemnify and hold harmless the said Frederick S. Converse, his heirs and assigns against any loss, damage or expenses which shall be suffered by or to which the said Frederick S. Converse shall be put by reason of any suit, claim or other demand hereinafter made or prosecuted against the said Frederick S. Converse for or on account of the said accident to me.

"(3) That upon the settlement of any claim I have or may have against any one else who may be liable for the injury to me on or about the said second day of August, 1915, I will execute, and deliver to the said Frederick S. Converse or his attorneys, a good and sufficient release of said cause of action.

"(4) That I will and my attorneys shall at the request of the said Frederick S. Converse, execute and deliver an agreement discontinuing the action now pending in which I am plaintiff and the said Frederick S. Converse is named as defendant.

"It is understood and agreed, however, that I do not hereby release my cause of action against any one who may be liable for the injury aforesaid, that I expressly reserve any and all rights against any one else who may be liable and that nothing herein contained shall be construed to prevent any action against any one other than the said Frederick S. Converse, his heirs or assigns.

"In witness whereof I hereunto set my hand and seal this twenty-third day of December, A. D. 1916."

At the close of the evidence the defendant asked the judge to give to the jury the following instructions:

"1. On all the evidence the plaintiff is not entitled to recover.

"2. The only duty which the defendant owed the plaintiff was to abstain from malicious or wilful injury, or from such wanton, wilful or reckless conduct as would amount to wilful or malicious injury.

"3. There is no evidence that the act of Stevenson in digging up the tank was within the scope of his employment.

"4. If you find that the defendant by its agent, Quinn, did not instruct Stevenson to dig up the tank, you must find for the defendant.

"5. If you find that the act of Stevenson, in digging up the tank, was done with the authority of the National Oil Company or its agent, Quinn, and if you find that Stevenson finished the job of digging up the tank and warned Converse or his agents that the excavation should be properly guarded, this would not be evidence of such wilful, wanton or reckless conduct as would amount to setting a trap for the plaintiff by the defendant, and the plaintiff could not under these circumstances recover."

The sixth request was waived.

"7. There is no evidence which would justify you in finding that Stevenson dug the tank up in promoting the defendant's business.

"8. The defendant cannot be held to the same degree of care to the plaintiff as her employer, Converse, would be held.

"9. The employer of the plaintiff (Converse) was obliged to abstain from setting a trap or from acting in such a reckless manner as to set a trap for the plaintiff; but the defendant having dug the hole, had no custody over the premises, and if the defendant, by its agent, notified the employer of the plaintiff of the danger, this would be evidence that it was not guilty of wanton or reckless conduct to the plaintiff.

"10. If the plaintiff walked on the driveway in a fog so thick that she could not distinguish her companions, when she was not engaged on any errand of her employer, this would be evidence of lack of due care on her part for the jury to consider, unless they find it was absolutely necessary for her health and well being to take a walk in the night in question.

"11. It is for the jury to say whether it was negligent for the plaintiff, while engaged on an errand of her own, to leave the

driveway for the purpose of crossing on the lawn in a fog so thick that she could not distinguish her companions.

"12. If the jury find as a fact that the plaintiff did leave the driveway for the purpose of getting a pear for herself in a night when the fog was so thick that she could not see her companions, this would be evidence which would warrant a finding that she was not in the exercise of due care.

"13. The defendant owed no greater duty to the servant of Converse than he did to Converse himself, and if you find that he had warred Converse, or one of his agents or servants, or if you find that he had requested Converse or his agents or servants to cover or protect said hole or put a warning light upon said hole, the defendant was not guilty of such reckless conduct as would amount to setting a trap for the plaintiff.

"14. The defendant had no control of the premises upon which the plaintiff was injured, and if you find that Stevenson dug the hole with the authority of the defendant and warned Converse through his agents or servants of the necessity of guarding said hole, the defendant was not guilty of negligence of such a degree as would warrant a verdict for the plaintiff.

"15. The covenant not to sue must be taken by you together with the letters that have been introduced in evidence and the statements of the plaintiff in deciding whether the plaintiff intended to discharge or release Converse from all liability, and, if you find on all the evidence that the plaintiff intended to discharge or release Converse from all further liability by the receipt of $1,500, you must find for the defendant.

"16. The defendant owed only a duty to the plaintiff which is owed to a bare licensee, namely to abstain from such negligence as amounted to wanton or wilful misconduct.

"17. The plaintiff, in using the driveway, which led past the tank, was a bare licensee.

"18. The plaintiff was at best a bare licensee of Converse, if she turned from the driveway and went in search of fruit.

"19. The plaintiff on all the evidence was never granted any permission by Converse to pick fruit for her use.

"20. If the jury find there is any liability on the part of the defendant, they must consider the payment of $1,500 by Converse in mitigation of damages."

The judge refused to give any of these instructions and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $5,000. The defendant alleged exceptions to the judge's refusal to give the instructions requested "and to so much of the charge as was inconsistent with the said instructions."

*J. J. Cummings*, for the defendant.

*J. F. Ryan*, for the plaintiff.

CARROLL, J. The plaintiff was injured by stepping into a hole containing a gasoline tank, near a private driveway on the premises of Frederick S. Converse, by whom she was employed as a housemaid. One of her duties was to pick flowers for the table from the garden. The defendant delivered gasoline to Converse from a truck driven by one Stevenson in its employ; the gasoline was poured into a tank buried in a grass plot near the edge of a circular driveway. It was thought there was a leak in the tank and Stevenson hired a man to take the tank up. A round hole about four or five feet in diameter and four or five feet deep was dug, and left open and unprotected for three days; when in this condition between eight and nine o'clock on a foggy night, while the plaintiff, in company with two other housemaids employed by Converse was "getting an airing," she fell into the hole and was injured. She testified that she did not leave the driveway, that the hole extended into it, and that she was injured while in the driveway. There was other evidence indicating that she fell on the lawn while on her way to get a pear from one of the trees. Stevenson, the driver of the truck, whose duty it was to sell for the defendant gasoline, oils and tanks, testified, that he informed Quinn, the defendant's president, that he was going to "take up and, if possible, repair Mr. Converse's tank," and Quinn told him to "go ahead." Stevenson paid for the excavating and reported to Quinn that Converse was satisfied with the tank; a bill for the amount paid by Stevenson was sent to Converse by Quinn. The plaintiff entered into a covenant not to sue Converse and received from him $1,500. The jury found for the plaintiff in the sum of $5,000.

The jury could have found that when injured the plaintiff was not upon the lawn, but was on the driveway. She so testified, and there was evidence that while the tank was from six inches to a

foot from the driveway before the excavating was begun, the hole made by the defendant's direction was four or five feet deep and four or five feet in diameter. There was, therefore, some evidence that the unguarded hole extended into the driveway and that the plaintiff while walking thereon was injured.

The defendant in doing the excavating was an independent contractor, whose duty it was to use reasonable care to guard the work, and in a proper way to protect the employees of Converse, lawfully using the driveway, from the danger of falling into the hole. If the hole was in the driveway designed and used for travel, the defendant was bound to anticipate that it was a source of danger to persons walking thereon, and to provide against what was likely to happen. *Hill* v. *Winsor*, 118 Mass. 251. *Boutlier* v. *Malden*, 226 Mass. 479.

The defendant relies on *Carey* v. *Baxter*, 201 Mass. 522, where the plaintiff was injured by falling from the side door of her tenement because of the removal of three wooden steps by a contractor who was excavating for a walk to be laid along the sidewalk in front of the house and from the street to the front door and to the side door. That case is plainly distinguishable from the case at bar. The plaintiff had been told by the landlord what was to be done; she knew that the work involved the removal of the steps and she could see from her tenement that the work was going on. The defendant had no reason to suppose that the plaintiff was ignorant of the condition of the walk and the removal of the steps, and he had no reason to anticipate harm to the plaintiff. It was not probable that she would attempt to use the steps when she could see to what extent the work was done and the defendant was not bound to foresee the improbable.

In the case at bar the plaintiff testified she had often, before this time, taken walks, passing where the tank was, though she did not remember seeing it. In using the driveway for her own convenience she was rightfully on the premises, and stood toward the defendant in the right of her employer. While the defendant had the right to dig the hole on the employer's premises, it was liable to the plaintiff for its negligence, she being lawfully where she was. *Boutlier* v. *Malden, supra. Massaletti* v. *Fitzroy*, 228 Mass. 487, 492, 493 and cases cited.

It does not clearly appear how long after the opening was made

the injury happened; but the jury must have found that it occurred before the work undertaken by Stevenson was completed, and accepted by Converse. Stevenson testified that he asked the chauffeur or gardener to "look out for it, and put some boards around it." This the chauffeur denied. But, even if it were found to be true, the defendant was not relieved of its responsibility as an independent contractor, by delegating its business to an employee of Converse who had no authority to relieve the defendant of the duty it had assumed. Nor was the defendant relieved from liability to the plaintiff merely because Stevenson said to Converse that he thought it "a good idea to fill the tank and leave it open so in case it showed a leak next day, it would not have to be dug up again." The work had not been accepted by Converse at this time, and there is nothing to show that he was informed or had any knowledge that the opening was left unguarded and unprotected.

There was evidence that the plaintiff and the other maids picked fruit in the daytime and no objections had been made. Even if she were on the lawn and not on the driveway and at the time was looking for a pear, the jury could infer that in passing over the lawn, although not invited, she was not there unlawfully so far as the defendant was concerned and could recover for its negligence. *Massaletti* v. *Fitzroy, supra.*

There was evidence that Stevenson was authorized to do the work. Before undertaking it he reported to the defendant's president and was authorized to go on with it; moreover, he was reimbursed for the amount expended by him, and Converse paid the defendant for the work it had done. This was evidence of a ratification, and by adopting the act of Stevenson, the defendant became responsible for his conduct in performing the work. *Dempsey* v. *Chambers,* 154 Mass. 330. *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177.

The defendant asked the judge to instruct the jury that "there is no evidence that the act of Stevenson in digging up the tank was within the scope of his employment." As there was evidence that the act was authorized and ratified, this request was properly refused. The defendant further contends that the judge left it to the jury to find that the act of digging the hole was within the scope of Stevenson's employment, independently of the talk be-

tween him and Quinn. This part of the charge is open to the construction that the judge was then calling the jury's attention to the distinction between the acts of Stevenson done for some purpose of his own, and the acts of the corporation; and that, irrespective of the talk with Quinn, the corporation would not be liable for such acts of Stevenson. Following this the judge instructed the jury on the meaning to be attached to the talk with Quinn. But, even if the instruction authorized the jury to find that Stevenson was acting within the scope of his employment without considering the evidence of ratification and express approval, and assuming that there was no evidence in the case to support this instruction, the question now urged is not before us. The bill of exceptions recites: "the defendant claiming to be aggrieved by the rulings and refusal of the court to rule as requested and to give the instructions as requested, submits this bill of exceptions." The defendant did not call the judge's attention to the objection it now relies upon; it excepted generally to the rulings, and saved no specific exception to any part of the charge as given. See *Barker* v. *Loring,* 177 Mass. 389; *Leverone* v. *Arancio,* 179 Mass. 439, 447; *D'Arcy* v. *Mooshkin,* 183 Mass. 382; *Henderson* v. *Raymond Syndicate,* 183 Mass. 443; *Savage* v. *Marlborough Street Railway,* 186 Mass. 203.

The question whether the plaintiff accepted the $1,500 in discharge or release of Converse from all liability for the injuries received by the accident, — she having discontinued the action against him as provided in the agreement, — was a question of fact for the jury. They were fully instructed on this point. The covenant not to sue Converse did not purport to release the defendant; but not being a party or privy to the instrument it could introduce oral evidence to show that the plaintiff accepted the money in release of all claims against her employer, and on the evidence the jury could have so found; but the question was for them to decide, and they had the right to say that it was not accepted for this purpose. *Matheson* v. *O'Kane,* 211 Mass. 91. *Johnson* v. *Von Scholley,* 218 Mass. 454.

The defendant asked the court to instruct the jury, "If the jury find there is any liability on the part of the defendant, they must consider the payment of $1,500 by Converse in mitigation of damages." The request was refused. While the jury must have

found that this money was not received from Converse to release or discharge him from liability and that it was received from him in consideration of the plaintiff's covenant not to sue him for the personal injury she had received, the $1,500 should be applied in reduction of her damages. She was entitled to maintain an action against each or all who contributed to her injury, but she was entitled to but one satisfaction. Her cause of action was not extinguished by the receipt of the money. It was, however, a partial satisfaction of her claim; and she cannot receive, for the same wrong, remuneration in excess of her actual damage. It would be unjust for a plaintiff to retain money received from one of several tortfeasors under a covenant not to sue him for the injury, and to recover from the other tortfeasor full satisfaction for the same injury. In a joint contract obligation where money is received from one debtor under a contract never to sue him, the payment made in consideration of the agreement is a payment on account of the debt, and to that extent is a discharge of the debt as to all the debtors. See 25 Harv. Law Rev. 203, 218. The same principle applies to an action sounding in tort. In *Dwy* v. *Connecticut Co.* 89 Conn. 74, 79, the agreement of the plaintiff with one tortfeasor was construed as a covenant not to sue him; but evidence was admitted of the amount paid by him in reduction of damages in the action against the other tortfeasor. This rule was followed in *Bloss* v. *Plymale*, 3 W. Va. 393, 409, *Snow* v. *Chandler*, 10 N. H. 92, 95, *Chamberlin* v. *Murphy*, 41 Vt. 110, 118. The same ruling was made in the trial court in *Rice* v. *Reed*, [1900] 1 Q. B. 54, 58. It was assumed in the court of appeal that this ruling was correct, and apparently this course was followed in *Duck* v. *Mayeu*, [1892] 2 Q. B. 511. See also *Heyer* v. *Carr*, 6 R. I. 45; *Chicago* v. *Babcock*, 143 Ill. 358; *Miller* v. *Beck & Co.* 108 Iowa, 575, 578; *Ellis* v. *Esson*, 50 Wis. 138, 154; *Pogel* v. *Meilke*, 60 Wis. 248; *Miller* v. *Fenton*, 11 Paige, 18.

It follows that the instruction asked for should have been given, and this exception must be sustained. The other exceptions are overruled. If within thirty days after the date of the rescript the plaintiff remits all of the verdict in excess of $3,500, judgment is to be entered for the plaintiff in the sum of $3,500; otherwise, the exceptions are sustained.

*So ordered.*