EDMUND H. GREEN *vs.* LEONARD HOFFARTH.

MARY A. GREEN *vs.* SAME.

EDMUND H. GREEN *vs.* SAME.

Essex.   November 13, 1931. — December 4, 1931.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Witness*, Self contradictory statement. *Release. Joint Tortfeasors. Covenant. Negligence*, Gross, Motor vehicle, In use of way. *Evidence*, Competency, Opinion.

At the trial of an action for personal injuries sustained by one riding as a guest in an automobile operated by the defendant, a finding that the defendant was guilty of gross negligence was warranted by evidence that on a foggy, misty night the automobile, proceeding at thirty to forty miles an hour, collided with great force with the rear of a truck standing on the right hand side of the road and headed in the direction in which the automobile was travelling, with all wheels, except the left rear wheel, off the macadam; that the front lights of the truck were lit, but not the rear light; that electric lights in the

neighborhood threw considerable light on the road; that the plaintiff warned the defendant of the presence of the truck, but that the defendant at the time was turned around in his seat with his eyes on a person sitting in the back seat and the collision occurred before he could regain his position and control the automobile; that the defendant previously had been warned by the plaintiff, when he turned toward the back seat, to be careful and to watch the road; that the defendant did not see the truck until it was ten to fifteen feet away, although he could see ahead a distance of fifty feet; that he was operating without a license; and that, after the accident, he said that he knew the accident was his fault and that it would not have happened if he had been watching the road.

At the trial above described, the defendant introduced in evidence an instrument under seal in which, for a stated consideration, the plaintiff covenanted that he would not commence any action against the owner of the truck on account of the accident and that he would save the owner harmless from any such action; and which further provided that "I [plaintiff] do not hereby release my cause of action against anyone who may be liable for the injury aforesaid . . . I expressly reserve all rights against anyone else who may be liable and . . . nothing herein contained shall be construed to prevent any action on account of the said accident to me against anyone other than the" owner of the truck. In cross-examination, the plaintiff testified that he had stated that for the consideration recited in the instrument he would "discharge" his claims against the owner of the truck. In redirect examination he testified that, by "discharge," he meant that he did not intend to bring the owner of the truck into court. The trial judge at that time and in his charge stated to the jury the distinction between a release, as discharging the plaintiff's cause of action against both of two joint tortfeasors, and a mere covenant not to bring an action against one of them; that the plaintiff by such a covenant could preserve his cause of action against the defendant; that it was open to the defendant to show that the transaction effected by the instrument in reality was a release which would bar the action, but that "on the face of the . . . [instrument] this was not an extinguishing or discharge of the cause of action, but a mere covenant not to sue"; and that the burden was on the defendant to show that the instrument was a release. The jury found for the plaintiff. *Held,* that

(1) Other questions asked of the plaintiff in cross-examination, as to whether he understood that the release was a settlement and discharge of all claims against the owner of the truck, were excluded properly, since they called for the plaintiff's opinion;

(2) In view of the plaintiff's testimony on redirect examination, it could not be said as a matter of law that the plaintiff intended to use the word "discharge" in his testimony on cross-examination in its strict legal sense; and it was proper to leave to the jury the question, whether the plaintiff's claim was discharged;

(3) The instructions to the jury with reference to the instrument were sufficiently favorable to the defendant.

THREE ACTIONS OF TORT, two of them for personal injuries sustained in a collision on June 23, 1928, on Essex Avenue near Gloucester between an automobile operated by the defendant, in which the plaintiffs were riding as guests, and a truck owned by one Esther Alperin; and the third for consequential damages. Writs dated January 17, 1929.

The actions were tried together in the Superior Court before *Lummus*, J. Material evidence is stated in the opinion. The covenant mentioned in the opinion, which was signed and sealed by the plaintiffs, read as follows, in part:

"That, we, Mary A. Green and Edmund H. Green . . . in consideration of Seventeen hundred dollars to me paid by Esther Alperin . . . the receipt whereof is hereby acknowledged, do hereby covenant and agree to and with the said Esther Alperin, her heirs, representatives and assigns as follows: —

"(1) That we will forbear to sue or maintain any action, suit or other proceeding or to make any claim of any nature whatsoever against the said Esther Alperin for or on account of an accident to me on or about the twenty-third day of June, 1928, on the West Gloucester Road, Gloucester.

"(2) That we will, and my heirs and executors shall indemnify and hold harmless the said Esther Alperin, her heirs, representatives and assigns against any loss, damage or expense which shall be suffered by or to which the said Esther Alperin shall be put by reason of any suit, claim or other demand hereafter made or prosecuted against the said Esther Alperin for or on account of the said accident to me.

"It is understood and agreed, however, that I do not hereby release my cause of action against anyone who may be liable for the injury aforesaid, that I expressly reserve all rights against anyone else who may be liable and that nothing herein contained shall be construed to prevent any action on account of the said accident to me against anyone other than the said Esther Alperin, her heirs, representatives and assigns. . . ."

At the conclusion of the redirect examination of Mrs. Green concerning the covenant, the judge instructed the jury as follows:

"Gentlemen, you may want to know what this is all about. We are getting into some pretty fine law now. It is a principle of law that if a person has a claim for injuries and there are two people who may be liable jointly for the injuries, as in this case, where this plaintiff says that the joint, or concurrent, negligence of the driver of the truck and the driver of the car in which she was riding, combined to produce her injuries and that both the driver of the truck and the driver of the car in which she was riding were liable to her, it is a principle of law that if she discharges one of them from liability, she releases both. If she once accepts money from one of them and gives him a release, she wipes out her entire cause of action.

"Well, there is a way, however, in which she may get money from one of them, and at the same time reserve her cause of action against the other one, and that is by not releasing or discharging the one she makes the settlement with, but leaving her cause of action against him theoretically existing she agrees that although she has still a cause of action against him, she never will sue on it. That is what we call a covenant not to sue, and that is the nature of the paper that has been introduced here.

"According to the language of this paper, if this represented the real transaction between the parties, this plaintiff did not release Mrs. Alperin from liability, did not discharge her cause of action against Mrs. Alperin. Her cause of action remained theoretically existing, but she simply said to Mrs. Alperin, 'Although I still have a cause of action against you I agree I will never sue on it,' and if that was the real nature of the transaction then that instrument, that transaction, did not impair her right of action against the present defendant, because she had not released Mrs. Alperin, she had not discharged her claim against Mrs. Alperin. She had simply promised she would never bring suit against Mrs. Alperin under it.

"The defendant, in this case, on the other hand, is

arguing or contending that this paper which was given to Mrs. Alperin, was not the real transaction but the real transaction was a complete discharge of the claim against Mrs. Alperin, and if that were the fact, then the claim against the present defendant was discharged also. So you see, the thing that counsel have been contesting about in the last hour or so, is a pretty fine point of law; but I thought in order that you might understand what it was all about I had better explain it you now rather than wait for the charge.''

The judge denied a motion by the defendant in each action that a verdict be ordered in his favor. The following rulings, among others, requested by the defendant were refused by the judge:

12. ''If the plaintiff accepted from Esther Alperin a sum of money with the understanding that she was releasing Alperin from any further obligation on account of the accident causing the plaintiff's injuries, she is not entitled to recover.

13. ''You are not concerned with the name of the instrument executed by the plaintiff in favor of Esther Alperin. If you find that the plaintiff intended to release Alperin from all liability and obligations flowing from the collision of the two autos, your verdict must be for the defendant.''

A portion of the charge to the jury was as follows:

''It is a principle of law that if two people by joint or concurrent negligence cause injury to the plaintiff and the plaintiff makes a settlement with some one of them and releases his cause of action against that one, discharges his cause of action against that one, he discharges it against both.

''But that doesn't apply, as I told you during the evidence, that principle doesn't apply where he doesn't release and discharge his cause of action against the one, but merely covenants not to sue that particular one. The law makes a distinction between an extinguishment of the cause of action and a mere agreement not to bring suit against the particular person, and if he gives a mere covenant not to sue, not extinguishing or discharging his cause of action,

he may still sue the other person who shared in the wrong-doing.

"It is true that this defendant is not bound by the mere face of the papers that were used in this settlement. It is true that it is open to the defendant to contend that the real transaction was an extinguishment, a complete discharge of the cause of action and not a mere covenant not to sue, and if the defendant successfully shows you that by the greater weight of the evidence, then this plaintiff is barred against this defendant. But on the face of the papers that were given, this was not an extinguishing or discharge of the cause of action, but a mere covenant not to sue, and if the face of the papers represents the real transaction that was gone through with there between the plaintiffs and the insurance company that Mr. Lloyd represents, then the plaintiffs are still entitled to maintain its suit against the present defendant by showing liability on the part of the present defendant. And the burden of showing an extinguishment and discharge of the cause of action is on the defendant."

There was a verdict for the plaintiff in each action in the sums, respectively, of $300, $10,000 and $1,000. The defendant alleged exceptions.

*A. E. Yont*, for the defendant.

*M. A. Sullivan*, for the plaintiffs.

SANDERSON, J. Two of these actions were brought by husband and wife for personal injuries and the third was brought by the husband for consequential damages resulting from the collision of a truck with an automobile operated by the defendant, in which they were riding as his guests. The jury found for the plaintiffs, and the defendant excepted to the refusal of the trial judge to direct verdicts in his favor, to his refusal to give certain instructions, to certain statements in his charge to the jury, and to the exclusion and admission of certain evidence.

The road on which the accident happened was constructed of macadam, thirty-five to forty feet in width. The injuries were sustained at about nine o'clock on a misty, foggy night in June, when the defendant, who was operating the

automobile without a license, drove it into the rear of the truck with front lights lighted but with no light in the rear, having upon it seven or eight gas tanks of a gray color. The jury could have found that the truck with no one in it was standing on the defendant's right hand side of the road and headed in the direction in which he was travelling, with all wheels, except the left rear wheel, off the macadam and on the reservation to the right, with emergency brakes set, and that electric lights in the neighborhood threw considerable light on the road. On the night in question the sun set at 8:23 P.M. daylight saving time.

The driver of the truck testified that he and another man were standing in front of it about two feet away when the collision occurred, resulting in driving the truck against them and knocking one of them down. The evidence tended to prove that at the time of the collision there was a "terrible crash" and that the rear of the truck rose in the air and was turned around to the left by the force of the collision; that the top of the defendant's automobile was off, the front gone and that the car was nothing but a "mass of wreckage." The defendant himself was thrown out through the windshield. There was testimony that the speed of the defendant's automobile at the time was from thirty to forty miles an hour. One of the plaintiffs saw the truck when about forty feet away and the other when about twenty-five feet away, and they both shouted a warning, but the defendant at the time was turned around in his seat with his eyes on the male plaintiff, who was sitting in the back seat. One of them testified that before the driver could regain his position and control the car the collision occurred. The defendant testified that on the night in question he could see ahead a distance of fifty feet but that he did not see the truck until he was within ten or fifteen feet of it; that it was off the road and not within his field of vision until it backed out in front of him. He had been warned by both plaintiffs shortly before, when turning toward the back seat, to be careful and to watch the road. After the accident the defendant said: "I know it is my

fault. If I had been watching the road it wouldn't have happened."

Testimony was introduced tending to prove that the female plaintiff had made a settlement with the owner of the truck and had given to such owner a covenant not to sue signed by her and her husband in connection with their claim for personal injuries and consequential damages resulting therefrom. The defendant attempted to show that the real transaction between the parties was a discharge of liability and not merely a covenant not to sue. In cross-examination of Mrs. Green she was asked whether, when she received this money, she understood it was in settlement of some claim she had against the owner of the truck, whether she understood it was a settlement of all claims against the owner, and whether when she received the money she agreed that she would discharge the owner of the truck from any further responsibility. These questions were excluded subject to the defendant's exception. These questions called for the witness's opinion or state of mind and in the rulings excluding them we find no error. The witness was also asked whether she told the representative of the insurance company that if they would pay her $1,700 the payment would discharge any claim she had against the owner of the truck on account of this accident, and she said, "Yes." In redirect examination she was asked questions as to her understanding of the meaning of the word "discharge," and she testified in effect that she meant that she did not intend to bring the owner of the truck into court.

The judge in his charge said: "It is true that it is open to the defendant to contend that the real transaction was an extinguishment, a complete discharge of the cause of action and not a mere covenant not to sue, and if the defendant successfully shows you that by the greater weight of the evidence, then this plaintiff is barred against this defendant. But on the face of the papers that were given, this was not an extinguishing or discharge of the cause of action, but a mere covenant not to sue."

We are of opinion that Mrs. Green in saying "Yes" to

a question in which the word "discharge" was used cannot as matter of law be held to have intended to use the word in its strict legal sense. In view of her explanation of her understanding of its meaning and the absence of any evidence to show what representative of the insurance company was speaking and what his authority was to represent the owner in the matter, the ruling leaving to the jury the question whether the claim was in fact discharged was sufficiently favorable to the defendant. The rulings of the trial judge as to the difference between a covenant not to sue and a discharge from liability protected all the defendant's essential rights so far as this matter was concerned. *Matheson* v. *O'Kane,* 211 Mass. 91. *O'Neil* v. *National Oil Co.* 231 Mass. 20, 28.

The only counts on which the cases were submitted to the jury were those charging gross negligence of the defendant. The trial judge sufficiently defined the difference between negligence and gross negligence by quoting from *Altman* v. *Aronson,* 231 Mass. 588. The contention of the defendant that the evidence did not warrant a finding of gross negligence and for that reason his motions for directed verdicts should have been granted cannot be sustained. The defendant was operating the automobile at the rate of speed stated, without a license, with poor visibility because of mist and fog, on a wet macadam surface, and was turning around and talking to some one on the rear seat immediately before the accident, and had been warned to be more careful in his driving and to watch the road. Upon the evidence the cases are controlled by cases like *Kirby* v. *Keating,* 271 Mass. 390, and *Meeney* v. *Doyle,* 276 Mass. 218, and are distinguishable from those in which the evidence did not support a finding of gross negligence.

In each case the entry must be

*Exceptions overruled.*