ARTHUR C. GRAVELLE *vs.* NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY.

ARTHUR E. DUBOIS *vs.* SAME.

Middlesex.   November 22, 23, 1932. — March 2, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence*, Licensee; Railroad: private track.

Neither the owner nor the operator of an automobile, which was struck
by a railroad train on a grade crossing of a private spur track with a
private way upon the premises of their employer, could recover in
actions of tort against the railroad corporation for damage to the
automobile and personal injuries resulting from such collision, where
it appeared that the operator was driving the automobile upon the
crossing at the owner's request for the owner's individual benefit and
not for any purpose connected with the business of the employer,
and that the collision was not due to wilful, wanton or reckless mis-
conduct of the defendant's employees.

TWO ACTIONS OF TORT, described in the opinion. Writs
dated May 29, 1929, and February 7, 1931, respectively.

In the Superior Court, the actions were tried together
before *Brown*, J. Material evidence is described in the
opinion. At the close of the evidence, the defendant moved
in each action that a verdict be ordered in its favor. The
motions were denied. Subject to leave reserved under
G. L. (Ter. Ed.) c. 231, § 120, verdicts were recorded for
the plaintiffs in the sums of $11,000 and $500, respectively.
The trial judge thereafter denied a motion by the defendant
in each action that a verdict be entered in its favor. The
defendant alleged exceptions.

*E. J. Phillips*, (*H. Lawlor* with him,) for the defendant.

*G. L. O'Hara*, (*A. L. Eno & P. P. A. O'Connell* with him,) for the plaintiffs.

PIERCE, J. These are actions of tort which arise out of a collision between an automobile owned by the plaintiff Dubois, and driven by the plaintiff Gravelle, and a switching engine operated by servants of the defendant at about 1:30 P.M. February 21, 1929, on a private railroad spur track owned by the Saco-Lowell Shops where the said spur track crosses a private driveway on the Saco-Lowell Shops' property in Newton, Massachusetts. By two separate actions, tried together, the plaintiff Dubois seeks to recover for damage to his automobile, and the plaintiff Gravelle seeks to recover damages for personal injuries sustained by him as the result of the collision. The declaration of each plaintiff contained three counts; the first alleged ordinary negligence, the second "gross negligence," and the third "wilful and wanton conduct." The trial judge ruled, without exception saved by plaintiff or defendant, that there was no evidence "that the crew of this engine was guilty of wanton and wilful conduct," and submitted the cases to the jury on the count for ordinary negligence. The jury returned a verdict in favor of each plaintiff, which was accepted by the judge with leave reserved under G. L. (Ter. Ed.) c. 231, § 120, to enter a verdict for the defendant. At the close of all the evidence in each case the defendant filed a written motion for a directed verdict for the defendant and duly excepted to the refusal of the trial judge so to direct the jury. The defendant in each case duly filed a motion for a verdict for the defendant to be entered under the leave reserved. The motion was heard and denied and the defendant duly excepted. The issues of law before this court relate to the denial of the defendant's motions for directed verdicts, to the denial of the defendant's motions for the entry of verdicts under the leave reserved, and to the refusal of the judge to give certain instructions requested by the defendant.

The material facts are as follows: The "accident happened within the private property of the Saco-Lowell Com-

pany, and . . . the tracks and crossing were owned and maintained by the Saco-Lowell Shops." At the time of the accident on February 21, 1929, at about 1:30 P.M., the defendant was doing switching in the Saco-Lowell Shops yards. At the private crossing the tracks run substantially north and south. The driveway as it crossed the tracks was planked to the width of twenty feet from north to south. Just south of the crossing there were two sets of tracks, four rails at the crossing, and just north of the crossing these four rails merge into two rails and from there north there is but one track. The easterly of these two converging lines south of the crossing known as the trestle track is the one upon which the train approached from the south and collided with the automobile. The trestle track extended southerly from the crossing about five hundred feet where it ended, and as it proceeded southerly from the crossing it curved easterly, or to the left as one looked south from the crossing. It ascends from the crossing southerly at a two per cent grade, which is a stiff grade for a railroad trestle, and three hundred feet south of the crossing is six feet higher than it was at the crossing. From the center of the crossing one can see south four hundred sixty-eight feet. The operator of the automobile drove from the foundry building situated easterly from the crossing. The driveway on which he drove was a crooked one until it reached the crossing and passed westerly across the tracks. From a point in the driveway one hundred fifty feet easterly of the crossing and from that point up to the crossing one looking southerly toward the trestle track can see the whole length of that track at any point.

The plaintiff Gravelle, on the day of the accident, had worked for the Saco-Lowell Shops for seven or eight years as a pattern clerk, and was somewhat, but not altogether, under the orders of the plaintiff Dubois, who was foreman of the department in which Gravelle worked. He was asked by the plaintiff Dubois to put chains on Dubois's sedan automobile which was parked on Needham Street. To execute this request Gravelle, after his lunch hour, which was between twelve o'clock noon and one o'clock,

went to Needham Street, found the automobile there parked
in the highway, drove over connecting streets to the cross-
ing and then drove it over the crossing easterly around to
the foundry basement. After he got the chains on at the
foundry basement he started to go back with the automobile
over the same route. At nine o'clock that morning a heavy
snow storm had started. It snowed heavily and at one
o'clock there were six or eight inches of snow. After he
had put on the chains, one Paul Allard got into the auto-
mobile, and Gravelle, with the windows open, drove down
the driveway and stopped five feet from the track; he
looked up and down, saw nothing and then put the auto-
mobile in low speed and drove on the crossing; he could
see the railroad tracks but could not see the planking be-
cause of the snow. As he got on the planking the left
front wheel slipped off the planking down in between the
rails, and he tried and failed to get on by backing up two
or three times. While he was so doing Allard sitting beside
him said an engine was coming. He looked up quickly and
saw the engine coming down the track three hundred feet
away. It was approaching at the rate of three miles an
hour. The end of the trestle was about five hundred feet
from the crossing and the train was about two hundred
feet long. The engine was backing and pulling three coal
cars, each thirty-eight feet long. The part of the trestle
where the train was was not visible to him because of a
loading platform and crane which obscured his view. He
started to get out by the right door after Allard had got
out, but, hindered by the shifting lever and brake, he got
tangled up in some way and was unable to get out by the
door before the train hit the automobile, threw him back
in the seat, and closed the door which Allard had left open.
Allard testified that he got out the right hand door, ran
around to the front of the automobile and thirty to thirty-
five feet up the track; that he started to hollo and motion
violently; that he saw one man on the side nearest to him;
that the man "turned around and looked, looked back,
away again, looked back, then he looked back of his tender
when he looked beyond him"; that the train passed him

going nine or ten miles per hour; that he tried to keep up with the train, holloing to stop, but he could not because the snow was so deep; that the wheels of the locomotive were rolling and stopped rolling after the collision, and the automobile was pushed about eighty feet; that when he shouted first the engineer was looking toward his train which was going backwards, and he was not looking in the direction in which he was going; that his window was open and it was snowing heavily. He further testified "that the switching engine was in the plant every day and at the same time it was there the day of this accident; that the switching engine was to be expected on any track."

Dubois testified that "he was foreman at the Saco-Lowell Shops; that he was the owner of the car in the accident; that he was foreman of the department in which Gravelle worked; that Gravelle was required to do what Dubois told him with respect to Saco-Lowell business; that he had some conversation with Gravelle about putting chains on his (Dubois's) car; that he did not know where Gravelle went after that; that he did not see the car again until 3:30 P.M.; that Gravelle was somewhat, but not altogether, under his orders."

Gravelle testified "that Dubois did not ask him to take the car back after he put the chains on; that he was driving the car back to where he found it after putting the chains on [at the time of the accident]; that Dubois did not know that he was driving his car in to put chains on or that he drove it back after he put the chains on."

On the above evidence the jury could have found that the accident and the consequent injury to the automobile and to Gravelle were due in part to the weather conditions which obscured the view of the crossing by the engineer, and in part to the failure of the defendant in the circumstances to maintain an observer who should warn the engineer of obstructions at the crossing in season to stop the train before colliding with the obstruction. Upon the evidence the duty of the defendant not to collide with the automobile of the plaintiff Dubois was not different from

what it would have been had the plaintiff in person been driving his automobile "on a frolic of his own" entirely disconnected with any business of the Saco-Lowell Shops. In such a situation the right of the plaintiff and the obligation of the defendant would be measured by standards of duty applicable to a mere licensee. The motion for a directed verdict in the action by Dubois should have been allowed.

The duty of the defendant to Gravelle is measured by the standard applied to the action of Dubois. At the time of the accident and for a half hour before Gravelle was occupied on a small job which he had undertaken at the request of the foreman in the department where he worked. The job was personal to him and to the foreman and was in no way connected with the Saco-Lowell business. · In driving the automobile of Dubois over the driveway on the premises of the Saco-Lowell Shops, including the crossing, Gravelle was on no business that enured to the benefit of that company. There is no evidence that his employer, or his foreman in the department of the Saco-Lowell Shops, knew that he was using the driveway, and there is no evidence that Gravelle owned an automobile or was given permission with employee owners of automobiles to use the driveway over the crossing as a means of access to places provided by the company for parking. His rights to drive an automobile over the driveway and crossing were those of a mere licensee and in no degree those of an invitee. In the use of the tracks and crossing of the Saco-Lowell Shops the duty of the defendant to the plaintiff was no greater than the duty of the Saco-Lowell Shops. That duty was to refrain from wilful, wanton and reckless misconduct. Neither the owner nor the contractor is liable for mere negligence to a licensee in the performance of work on the premises, and unless there is evidence of wilful or wanton misconduct the injured licensee cannot recover. Here there was no evidence, as the trial judge ruled, of such conduct.

In each action the motion for a directed verdict should

have been allowed. *Cole* v. *L. D. Willcutt & Sons Co.* 214 Mass. 453. *Murphy* v. *Boston & Maine Railroad,* 248 Mass. 78, 82.

It follows that in each action the exceptions must be sustained, and judgment be entered for the defendant.

*So ordered.*