ANNETTA L. PARTRIDGE, administratrix, *vs.* UNITED ELASTIC CORPORATION.

Hampshire. April 5, October 3, 1934. — October 23, 1934.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Negligence*, Invited person, Of one owning or controlling real estate, Causing death, Contributory. *Practice, Civil*, Conduct of trial: judge's charge, requests, rulings and instructions; Exceptions: whether error harmful. *Evidence*, Relevancy and materiality. *Damages*, For tort.

At the trial of an action of tort, under G. L. (Ter. Ed.) c. 229, § 5, by an administratrix against a corporation operating a manufacturing plant for causing the death of the plaintiff's intestate while on the premises of the defendant, an issue was, whether the intestate was on the premises as a mere licensee or as an invitee of the defendant. There was evidence that the intestate was employed by a telephone company as a repair man; that the defendant had some trouble with its telephone system; that it was the intestate's duty to test that system and make needed repairs; that at about 4 P.M. he informed a supervisor in the telephone office that he was going out to do a small job elsewhere and intended then to proceed to do some testing at the defendant's plant; and that a few minutes before 5 P.M. he telephoned to a clerk in the office of the telephone company, whose duty it was to keep a record of his time, giving her information from which it could be found that he had spent a certain amount of time on aerial cable repairs at the plant of the defendant. The injury resulting in his death occurred as he was on the defendant's premises leaving the plant shortly after 5 P.M. *Held*, that a finding was warranted that, when injured, the intestate was upon the premises of the defendant for its purposes and at its implied invitation.

At the trial of the action above described, it appeared that the intestate, in leaving the defendant's plant shortly after 5 P.M. on a day late in December, after the lights there had been turned off, drove an automobile, with headlights lighted, along a roadway in the defendant's grounds which, after a sharp turn, ran over a canal on a bridge where there was no guard rail, and that the automobile ran into the canal and he was drowned. There was evidence that there had been no

guard rail on the bridge for twelve or thirteen years, during which the intestate had been coming to the plant; but it did not appear that he was familiar with the increased danger which arose from darkness, or that he knew that it was the defendant's practice to turn the lights off shortly after 5 P.M. *Held*, that

(1) If the intestate was on the premises for the defendant's purposes and at its implied invitation, the defendant owed him the same duty of care which it owed to its own servants;

(2) In view of the fact that there was an absence of means of preventing persons from driving off the roadway into the canal, findings were warranted that it was negligence on the part of the defendant to turn the lights off without first giving the intestate an opportunity to make his way past the canal, and that such negligence was a cause of the accident and death;

(3) Even if the intestate realized the danger in the unguarded bridge and failed to avoid it, he was not necessarily negligent; and a ruling that the defendant had sustained the burden of proving him guilty of contributory negligence could not properly have been made.

The unguarded bridge was only one element in the breach of duty by the defendant alleged in the action above described, and it therefore was proper for the trial judge to refuse to rule: "If the deceased entered upon the defendant's premises to do work for the telephone company, in the circumstances described, the defendant owed him no duty to warn him that there was no guard or railing upon the bridge crossing the canal."

A judge in his charge to the jury need state to them only the law applicable in the particular case being tried.

At the trial of the action above described, after the close of the judge's charge, which contained contradictory instructions respecting liability of the defendant if the intestate were found to be a mere licensee, the defendant saved certain exceptions and the judge stated to the jury that they should determine whether or not the intestate "was on the premises as an invitee or a pure licensee, that is, on business of his own"; that if they found that he "entered the premises of the defendant purely upon business of his own, . . . then of course the situation is not such that would warrant the . . . [plaintiff] prevailing in this case. It is only where he entered upon a matter that was of importance to both" the defendant and to his employer. The defendant made no further objection. There was a verdict for the plaintiff. *Held*, that

(1) It must be inferred from the verdict that the jury found the intestate to have been an invitee;

(2) Taken as a whole, the charge was not erroneous or misleading; and the exceptions must be overruled.

The plaintiff administratrix in the action above described was the widow of the intestate. At the trial the defendant offered and the judge excluded evidence that the intestate's employer, which was not insured under the workmen's compensation act, maintained a benefit fund for employees; that the plan provided for a death benefit to the wife upon the death of an employee resulting from accidental injury,

which the wife might elect to take instead of bringing an action at law against the employer; that the plaintiff, as widow of the intestate, had elected to take the death benefit, had received from the benefit fund $5,000 for her husband's death and $150 for funeral expenses and had given two covenants not to sue the employer, one signed by her individually and the other signed by her as administratrix.  There were verdicts for the plaintiff on a count for conscious suffering in the sum of $1, and on a count for causing the death in the sum of $8,542. The defendant contended that the plaintiff could not recover or collect that part of the verdict on the count for causing death which, when the verdict was added to the $5,150 received from the benefit fund, exceeded the $10,000 permitted as damages for death under G. L. (Ter. Ed.) c. 229, § 5.  *Held*, that

(1) The payment from the benefit fund was to the widow as such, not to her as administratrix, and did not depend upon the existence of any cause of action or supposed cause of action against the intestate's employer;

(2) The defendant was not entitled, because of the amount received from the benefit fund maintained by the decedent's employer, to a reduction in the penalty assessed against the defendant under the statute.

(3) The evidence properly was excluded.

TORT.  Writ dated July 2, 1931.

In the Superior Court, the action was tried before *T. J. Hammond*, J.  Material evidence, and rulings and instructions by the judge are described in the opinion.  There were verdicts for the plaintiff on a count for conscious suffering of her intestate in the sum of $1, and on a count for causing his death in the sum of $8,542.  The defendant alleged exceptions.

*F. J. Carney*, (*W. J. Killion* with him,) for the defendant.
*J. N. Clark*, for the plaintiff.

LUMMUS, J.  On December 20, 1929, the plaintiff's intestate was employed by the New England Telephone and Telegraph Company as a first-class repair man in Easthampton and neighboring towns.  On that day, just before five o'clock in the afternoon, he was in the switchboard room on the premises of the defendant, talking with the head electrician of the defendant.  About five o'clock, the plaintiff's intestate left the switchboard room, and shortly afterwards started in his automobile, with headlights lighted, to leave the defendant's plant by a roadway on its premises, which after a sharp turn ran across a canal, also on its

premises. There was no guard rail on the side of the road-way as it crossed the canal. The automobile ran off into the canal and overturned, and the plaintiff's intestate was drowned.

On the first count, for conscious suffering, the jury found for the plaintiff, and assessed damages of $1. On the second count, under G. L. (Ter. Ed.) c. 229, § 5, for negligently causing death, the jury found for the plaintiff, and assessed damages of $8,542. Exceptions taken by the defendant bring the case here.

The first question is whether there was evidence from which the jury could have found that the plaintiff's intestate was an invitee of the defendant. The head electrician of the defendant testified that the only subject of his brief conversation with the plaintiff's intestate, just before the accident, was their proposed joint wiring of a church that evening, in preparation for Christmas. But there was evidence from other witnesses that there was trouble with the telephone system maintained by the telephone company at the plant of the defendant; that it was the duty of the plaintiff's intestate to test that system and make the needed repairs; and that about four o'clock on the afternoon of the accident he informed a supervisor in the telephone office that he was going out to do a small job elsewhere and intended then to proceed to do some testing at the defendant's plant. That was evidence of the purpose with which he visited the plant. *Inness* v. *Boston, Revere Beach, & Lynn Railroad,* 168 Mass. 433. *Commonwealth* v. *Trefethen,* 157 Mass. 180, 185–195. *Gould* v. *Kramer,* 253 Mass. 433, 438, 439. Wigmore, Evidence (2d ed.) §§ 1725, 1726. There was also evidence, admissible under G. L. (Ter. Ed.) c. 233, § 65, that a few minutes before five o'clock on that afternoon he telephoned to a clerk in the office of the telephone company, whose duty it was to keep a record of his time, giving her information from which it could be found that he had spent a certain amount of time on aerial cable repairs at the plant of the defendant. This warranted a finding that the plaintiff's intestate was upon the premises of the defendant for its purposes and at its implied invi-

tation. In that case, the defendant owed him the same duty of care that it owed to its own servants. *Walker* v. *Benz Kid Co.* 279 Mass. 533. *Brogna* v. *Capodilupo*, 279 Mass. 586. *Stern* v. *Swartz*, 283 Mass. 436. See also *Lanstein* v. *Acme White Lead & Color Works*, 285 Mass. 328, and cases cited.

The next question is whether there was evidence of a negligent breach of duty on the part of the defendant towards the plaintiff's intestate. There was an absence of means of preventing persons from driving off the roadway into the canal. This condition had existed, according to uncontradicted testimony, for twelve or thirteen years, during which Partridge had been coming to the Glendale Mills, where he had handled all the telephone troubles that arose. But it did not appear that he was familiar with the increased danger that arose from darkness, or that he knew that it was the practice to turn the lights off shortly after five o'clock. It might have been found negligent to turn the lights off at that time without first giving Partridge an opportunity to make his way out. Such negligence might have been found a cause of the accident and death.

A ruling that the defendant had sustained the burden of proof of showing contributory negligence on the part of Partridge could not have been made. Even if Partridge realized the danger in the unguarded bridge and failed to avoid it, he was not necessarily negligent. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47, 50. The question was for the jury.

What has been said disposes of most of the rulings and requests for rulings concerning which exceptions have been argued. A few must, however, be dealt with more particularly.

The defendant excepted to the refusal of the judge to give the seventh request, which was as follows: "7. If the deceased entered upon the defendant's premises to do work for the telephone company, under the circumstances described, the defendant owed him no duty to warn him that there was no guard or railing upon the bridge crossing the canal." That doubtless was true as applied to condi-

tions in daylight.   But the negligence relied on was in turn-
ing off the lights without warning and leaving the plaintiff
to find his way out in the dark over a dangerous bridge.
The unguarded bridge was only one element in the breach
of duty alleged.   The request falls within the rule stated in
*Barnes* v. *Berkshire Street Railway*, 281 Mass. 47, 50, *et seq.*
As Holmes, J., said in *Collins* v. *Greenfield*, 172 Mass. 78, 81,
"the judge was not required . . . to break one by one the
sticks which were relied on only when bound together in a
fagot."   See also *Clarke* v. *Second National Bank*, 177 Mass.
257, 264; *Tonsman* v. *Greenglass*, 248 Mass. 275, 278, 279.
The eighth, eleventh, twelfth and nineteenth requests of
the defendant fall under the same rule.

The defendant saved an exception "to giving the plain-
tiff's fourth and fifth requests."   The passages in which the
judge dealt with the subject matter of those requests are
as follows:   "if Partridge was on the premises as a mere
licensee, the company . . . [was] not obliged to keep the
premises safe for his use or to warn him of the fact that
there was no rail on the cement slab or that the canal was
there.   If you should find, however, that the situation was
such that it amounted to a hidden trap, something that
wouldn't be seen or discovered or observed by the ordinary
person who was travelling back and forth on passageway
or route that [*sic*], the rule would be . . . [that] the
owner . . . [was] obliged, if . . . [it] knew of the existence
or should have known of the existence, to have warned
him of anything that you find tends to constitute a hid-
den trap or dangerous situation, that might properly be
described as such."   Later in the charge the judge said:
"If you find that Partridge was a licensee on the premises
of the defendant, it was the duty of the defendant to warn
him against hidden defects or the condition of the prem-
ises that constituted a defect.   The plaintiff is entitled to
recover if the jury find there existed on the premises a
hidden defect of which the defendant should have had
knowledge, of which Partridge had none, and which prac-
tically caused the death of Partridge. . . . if he was there
purely as a licensee and nothing more, then negligence on

the defendant's part must be proved by the plaintiff by a fair preponderance of the evidence. If you find the deceased was a licensee, then the only duty owed him was to refrain from any wanton, wilful or reckless conduct that was likely to injure him. . . . If you find that the deceased was a licensee only, then of course he wouldn't be entitled to recover except for wanton or wilful misconduct on the part of the defendant." Between the two passages already quoted, the judge said: "if you find that that was so, that he [Partridge] was not there on business of interest to the Telephone Company or to the Rubber Thread [the defendant], but was there purely in reference to matters of his own, and when I say matters of his own, I mean of some importance to him like the church festival, and for no other reason, then I instruct you as a matter of law, he could not recover."

In these contradictory instructions, the true rule as to the duty of a landowner to a mere licensee was stated when the judge said that if the deceased was a mere licensee, the plaintiff could not recover without proof of wilful, wanton or reckless conduct which caused the death. *O'Brien* v. *Union Freight Railroad,* 209 Mass. 449. *Romana* v. *Boston Elevated Railway,* 218 Mass. 76. *Hafey* v. *Turners Falls Power & Electric Co.* 240 Mass. 155. *Bruso* v. *Eastern States Exposition,* 269 Mass. 21, 24, 25. *Gravelle* v. *New York, New Haven & Hartford Railroad,* 282 Mass. 262. The expressions "hidden defect" and "hidden trap," used by the judge, furnish no plain or useful test of the application of that rule. Knowlton, J., in *Moffatt* v. *Kenny,* 174 Mass. 311, 315, 316. Compare *Erie Railroad* v. *Hilt,* 247 U. S. 97, 101. One statement of the judge, the one last quoted, was, that if Partridge was a mere licensee the plaintiff could not recover. If that statement was correct, as we think it was for the reason that there was no allegation and no evidence of wilful, wanton or reckless conduct, then there was no occasion to state at all the rule of liability of a landowner to a mere licensee. A jury need be told only the law applicable to their duty in the particular case. *Cronan* v. *Armitage,* 285 Mass. 520, 527, 528.

At the conclusion of the charge, after taking the exception to the charge already stated, the defendant sought to except to the failure of the judge to give its sixth requested ruling, which was in substance that if Partridge entered upon the defendant's premises for purposes of his own, the plaintiff could not recover.   The judge insisted that he had given that ruling, as in fact he had done in the passage just discussed.   To settle any doubt, the judge instructed the jury further, as follows: "I told you to determine whether or not Partridge was on the premises as an invitee or a pure licensee, that is, on business of his own.   If you find that Henry Partridge entered the premises of the defendant purely upon business of his own, with the reasonable expectation of receiving a gratuitous favor from one of the defendant's employees, then of course the situation is not such that would warrant the administrator prevailing in this case.   It is only where he entered upon a matter that was of importance to both . . . the defendant, and to the telephone company by whom he was employed."   Counsel for the plaintiff, out of hearing of the jury, so far as appears, questioned this, saying, "Isn't there still another qualification there, your Honor, as regards a hidden defect or trap?"   The judge answered, "Yes, and I am not going any further."   Counsel for the defendant did not point out the inconsistency between this last instruction and parts of the original charge, as it was his duty to do if he still relied on exceptions to inconsistent statements in the original charge (*Hunt* v. *Boston Terminal Co.* 212 Mass. 99, 101; *Wharmby* v. *Richards*, 277 Mass. 137), but passed to other matters, apparently satisfied.

The last word to the jury, just quoted, was in substance that the plaintiff could not recover unless Partridge was an invitee.   That was correct.   The contention of the plaintiff, previously countenanced by the judge, that the plaintiff might perhaps recover even though Partridge were only a licensee, was definitely put out of the case, although of course it would have been better to withdraw the earlier inconsistent instructions in terms.   Taking the charge as a whole, we think its net result was not erroneous or mis-

leading. *Lamoureux* v. *New York, New Haven & Hartford Railroad*, 169 Mass. 338, 341. *Doyle* v. *Singer Sewing Machine Co.* 220 Mass. 327, 331. *Cronin* v. *Boston Elevated Railway*, 233 Mass. 243, 246. *Boston* v. *Fountain*, 267 Mass. 196, 202. *Gilchrist* v. *Boston Elevated Railway*, 272 Mass. 346, 353. It must be inferred from the verdict that the jury found that Partridge was an invitee.

The defendant excepted to the exclusion of evidence that, although the telephone company was not insured under the workmen's compensation act, it maintained a benefit fund for employees (see *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1; *S. C.* 231 Mass. 546); that the plan provided for a death benefit to the wife upon the death of an employee resulting from accidental injury, which the wife might elect to take instead of bringing an action at law against that company; that Annetta L. Partridge as the widow of Henry E. Partridge elected to take the death benefit and did receive from the benefit fund $5,000 for death and $150 for funeral expenses, and gave two covenants, one signed by her individually and the other signed by her as administratrix, not to sue that company. The defendant suggests that it was entitled to have damages for conscious suffering reduced by whatever sum was received from a joint or concurrent wrongdoer even though only a covenant not to sue was given and the cause of action remained undischarged. *O'Neil* v. *National Oil Co.* 231 Mass. 20, 28, 29. *Shapiro* v. *Lyon*, 254 Mass. 110, 117. *Green* v. *Hoffarth*, 277 Mass. 508. But even if the telephone company could be deemed a joint or concurrent wrongdoer, the amount received from the benefit fund was for death, not for personal injury; and in any view, no harm was done the defendant, for the verdict for conscious suffering was in a merely nominal sum. As to the count for death, the defendant contends that the plaintiff cannot recover or collect that part of the verdict which, when the verdict is added to the $5,150 received from the benefit fund, exceeds the $10,000 permitted as damages for death under G. L. (Ter. Ed.) c. 229, § 5. The payment from the benefit fund was to the widow as such, not to her as administratrix.

It did not depend upon the existence of any cause of action or supposed cause of action against the telephone company. No such cause of action was claimed. It was more in the nature of insurance, with which a wrongdoer has no concern. *Gray* v. *Boston Elevated Railway,* 215 Mass. 143, 146. *Stevens* v. *Stewart-Warner Speedometer Corp.* 223 Mass. 44, 46. 81 Am. L. R. 320. See also *Mathews* v. *Carr,* 271 Mass. 362. Even if the entire recovery or collection of penalties from a number of wrongdoers for negligently causing death is limited to $10,000, which was not decided in *Porter* v. *Sorell,* 280 Mass. 457, the defendant in this case can get no reduction in its penalty because of the amount received from the benefit fund. The evidence was properly excluded.

*Exceptions overruled.*