JOSEPH PIERRE BELLIVEAU, administrator, *vs.* NEW YORK
CENTRAL RAILROAD COMPANY.

Middlesex.    October 8, 1947. — November 4, 1947.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Wanton or Reckless Conduct.    Railroad,* Yard.

A finding of wanton or reckless conduct on the part of employees of a
railroad corporation operating an engine and two freight cars on a
straight track in a freight yard would not have been warranted by
evidence of the circumstances in which, after being stopped about
eighty-five feet from a loading platform, the train started slowly and
passed close to the platform, and a pedestrian, who had crossed the
track and other tracks ahead of the train, was caught between the
cars and the platform.

TORT.    Writ in the Superior Court dated March 27, 1945.

The action was tried before *Dillon,* J., who ordered a
verdict for the defendant.    The plaintiff alleged exceptions.

*H. Lawlor,* (*R. B. Brooks* with him,) for the plaintiff.

*B. Potter,* (*T. J. McArdle* with him,) for the defendant.

WILLIAMS, J.    This is an action of tort brought by the
administrator of the estate of one Otis Morton for the
latter's death and conscious suffering resulting from an
accident occurring in Cambridge on April 11, 1944.    Morton
died on September 26, 1944, and the writ is dated March
27, 1945.    The amended declaration contains two counts,
the first for death under G. L. (Ter. Ed.) c. 229, § 3, as
amended by St. 1941, c. 460, § 2; c. 504, § 2, and the
second for conscious suffering under G. L. (Ter. Ed.) c. 229,
§ 6, as amended by St. 1939, c. 451, § 62.[1]    Each count
alleges negligent and "wilful, wanton or reckless" conduct
on the part of the defendant and its employees.

The place of the accident was a rectangular strip of land
some sixty feet in width extending between Pacific Street
on the west and Cross Street on the east about eight hundred
feet.    On this land, referred to in the testimony as the

---

[1] See now St. 1946, c. 614, § 3, effective January 1, 1947.

"terminal area" and owned by the Stimpson Terminal Company, were three parallel railroad tracks running east and west and owned by the terminal company but used by the defendant under a so called sidetrack agreement. The area was used for a freight yard.

About noon on the day of the accident a locomotive of the defendant was backing three box cars from west to east along track 39, the most northerly of the three tracks. The train crew consisted of the engineer, seated in the usual fireman's seat on the left or southerly side of the cab, the fireman, seated in the usual engineer's seat on the right side of the cab, and the conductor on the easterly end of the last box car. A brakeman had been left at Pacific Street. The train stopped at Cross Street where the third or last box car was dropped off or "spotted." The front of the locomotive was then approximately one hundred eighty-five feet from Cross Street and eighty-five feet east of a loading platform of the Green Spot Bottling Company located within a few feet of the northerly rail of track 39. The locomotive was started by the fireman, and the train proceeded on a straight track in a westerly direction at a speed of from four to five miles per hour. The engineer and fireman testified that as the train approached the bottling company platform they saw no one on or beside the track. The conductor testified that as the second box car was passing the platform he saw a man (later found to be Morton) rolled between the platform and the side of the car. An emergency arm signal was given to the fireman and the latter brought the train to an immediate stop. Morton's body was beside the track at the westerly end of the platform and about one hundred ten feet back from the front of the locomotive.

From statements later made by Morton it appeared that he worked for the Ward Baking Company somewhat south of the "terminal area"; and that he usually crossed the area from south to north on his way home to lunch and had so proceeded on the day of the accident. Three witnesses testified as follows to his description of the accident as given by him to them in the hospital: "that he was coming home the usual way for lunch and didn't see the train;

that he got across the tracks as he usually went and then saw the train coming; that he 'hollered' for the man to stop and raised his hand and the train continued going; that he could see a man on the train; that there was no way for him to go; that if the train had stopped it wouldn't have hit him; that he tried to get up on the platform but he couldn't and that the engine passed him and the box car rolled his body to the end of the platform; . . . that the engine passed him and the first box car struck him"; "that while he was crossing the tracks the train was stopped and he thought everything was clear; that when he got to this spot he looked up and the train was right on him; that he couldn't get out of the way so he tried to mount the platform and the train caught him at that time; that he held up his hand and hollered and heard some one say 'go ahead'; that he saw the engineer but he didn't know whether the engineer saw him or not; and that the next thing he knew the box car hit him and rolled him back the way he was coming; that he went home via the same route every day"; "that while he was crossing the tracks, he saw the train 'parked,' and he crossed the tracks and 'when he knew anything, the train was right up on him'; that he couldn't get back or forward; that he couldn't do anything; that there was no way for him to jump; that he couldn't get up on the platform because of his left leg; that he 'hollered, watching the front of the engine right on me'; that 'the engineer saw me and the brakeman, the brakeman said "go ahead"'; that the engine passed and the first car behind the engine struck him . . . that he was hit by the second car and the brakeman 'hollered' at him."

At the conclusion of the plaintiff's evidence counsel for the defendant read into the record certain answers of the plaintiff to interrogatories propounded by the defendant and then rested. The judge on motion directed a verdict for the defendant. The case is here on the plaintiff's exceptions to the allowance of this motion and the direction of the verdict. The plaintiff concedes that he cannot recover on proof of ordinary negligence on the part of the defendant or its employees.

There was no evidence of any express or implied invitation to the deceased by the Stimpson Terminal Company or the defendant to cross the "terminal area." The defendant's duty of care to the deceased was no greater than the duty owed by the Stimpson Terminal Company. *Murphy v. Boston & Maine Railroad,* 248 Mass. 78, 82. As to the defendant the deceased was at most a licensee. Toward him the only duty of the defendant was to refrain from wilful, wanton or reckless conduct. *Murphy* v. *Boston & Maine Railroad, supra. Cole* v. *L. D. Willcutt & Sons Co.* 214 Mass. 453. *Gravelle* v. *New York, New Haven & Hartford Railroad,* 282 Mass. 262, 267. In determining whether a jury would be warranted in finding such conduct the plaintiff is entitled to have the evidence considered in its aspect most favorable to him. When the deceased was crossing the tracks the train was stationary with the locomotive slightly over eighty-five feet away. When he first realized that the train was in motion it was "right on him." What the deceased meant by that expression is conjectural. He then "hollered" and some trainman saw him. A man characterized as the brakeman said "go ahead." The deceased must then have been between the northerly rail and the platform. It does not appear how far the locomotive was from him. It cannot reasonably be inferred that the train then could have been stopped and the accident avoided. In the circumstances the failure to observe the deceased when the train could have been stopped in time to prevent the collision is evidence only of ordinary negligence. The evidence fails to show wilful, wanton or reckless conduct. *Murphy* v. *Avery Chemical Co.* 240 Mass. 150, 154. *Chenery* v. *Fitchburg Railroad,* 160 Mass. 211, 213.

*Exceptions overruled.*